**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | |
|---|---|
| **IN RE** | |
| **GABRIELLE IRENE MCFARLAND** | **CASE NO. 16-21587** |
| **TERRY A. MCFARLAND** | |
| **DEBTORS** | |
| **CALLOWAY CLEANING &** | **PLAINTIFF** |
| **RESTORATION, INC.** | |
| **V.** | **ADV. NO. 17-2004** |
| **GABRIELLE IRENE MCFARLAND**, *et al*. | **DEFENDANTS** |

**MEMORANDUM OPINION**

Gabrielle and Terry McFarland ("Debtors") and their family suffered a fire at their home on Christmas Eve 2014. That night, they found Calloway Cleaning & Restoration, Inc. ("Creditor") on the internet and called them for help with clean-up, damage mitigation work and property remediation. When Creditor came to Debtors' residence on Christmas morning, the parties signed a "Work Authorization" for services (the "Contract"). As often happens with contracts, the parties later disagreed about each other's performance thereunder. Indeed, were this Court asked to decide at this juncture whether Debtors breached the Contract, genuine disputes of material fact would require a trial to resolve the claim. But the Court need not find liability under the Contract to resolve the pending motion.

This matter is before the Court on Debtors' Motion for Summary Judgment [ECF No. 18] (the "Motion") on both counts of Creditor's non-verified Amended Complaint [ECF No. 4] (the "Complaint"). The Complaint seeks to deny the discharge of a debt under 11 U.S.C. § 523(a)(2)(A) and (a)(4). The Court has reviewed the record, including the Motion, Creditor's

Response to the Motion [ECF No. 24], and Debtors' Reply [ECF No. 25], and heard the arguments of counsel. As explained below, Debtors' arguments are well taken, and summary judgment will be granted.

## BACKGROUND

The following material facts are undisputed. Creditor contends that Debtors owe Creditor a debt in connection with the Contract for Creditor to clean and restore Debtors' family residence after a fire on December 24-25, 2014. The Complaint attaches a pre-petition state court complaint that Creditor filed against Debtors in Boone County, Kentucky, seeking relief under breach of contract and *quantum meruit* theories, but not fraud. Debtors filed a counterclaim against Creditor in the state court case, and the parties were conducting discovery when Debtors filed their bankruptcy petition, resulting in a stay of that case. Thus, there has been no adjudication that Debtors owe a debt to Creditor.[1]

The Contract that Mr. McFarland and Creditor's representative signed [ECF No. 4 at Exh. A to state court complaint] is a one-page form document with Creditor's name pre-printed on it. The Contract identifies Debtors' residence as the property at which Creditor's services

---

[1] Debtors' petition (1) states, in Schedule A/B, that Debtors have a contingent and unliquidated claim against Creditor "for work done on [Debtors' residence] and Debtors' personal property as the result of fire damage" which they value at over $42,000 and claim as exempt on Schedule C; and (2) lists Creditor on Schedule E/F as having a debt incurred by both Debtors, states that this claim is of an unknown value, is not subject to offset, is a nonpriority unsecured debt, and does not identify whether it is contingent, unliquidated, or disputed. The petition also identifies the lawsuit between Creditor and Debtor pending in Boone Circuit Court and indicates that Debtors filed counterclaims against Creditor.

Debtors have not asserted counterclaims against Creditor in this adversary proceeding, but their Answer states "Debtors/Defendants have a counter action against the Plaintiff as the result of" unperformed work, substandard work, and items that have gone missing from the Property during the cleaning process. [ECF No. 6 ¶ 8.]

will be rendered.   It states that "Customer agrees to pay [Creditor] upon receipt of its invoice."

[*Id*.]   And, of particular import here, the Contract also states:

> Customer authorizes [Creditor] to make proof of loss to, and act as agent in collection and receive payment from any insurance company liable for the damages or condition of the aforementioned premises comprising the subject of this contract.
>
> Customer also agrees to make prompt payment of any deposit, deductibles or monies owed for the services rendered, which are not paid to [Creditor] by insurance company proceeds.

[*Id*.]   Debtors knew when they contacted Creditor that they would receive insurance proceeds to cover the restoration and related work performed on the residence.

The Contract does not specify the services Creditor was to perform or state how much Creditor would be paid for its work.   Creditor's state court complaint, attached to the Complaint herein, demanded a judgment against Debtors in the amount of $52,580.70.   The state court complaint attached unsigned and undated descriptions of mitigation and remediation services at Exhibit B; at oral argument on the Motion, Creditor's counsel stated that those documents constituted work estimates.

Sometime after the Contract's execution, Creditor's written estimates were submitted to Debtors' homeowners' insurance carrier.   After Creditor performed services, Debtors received approximately $53,000 in insurance proceeds based upon the written estimates.   Debtors, however, complained about perceived deficiencies with Creditor's work, including a claim that personal property removed by Creditor for cleaning had not been returned.   Mr. McFarland primarily handled the communications related to Debtors' complaints with Creditor's work.   Creditor did not complete the work to be performed at the residence.   Mr. McFarland testified that he would allow Creditor to "come back and fix these issues" or "come back and finish the

work," as Creditor requested, only "when all my property is returned." [ECF No. 24-1 at depo. p. 56.]

When Debtors received the insurance funds, they deposited them into Debtors' joint account. Then, those funds were moved into Mrs. McFarland's personal account. And, thereafter, Debtors used the insurance proceeds to pay other bills, including for automobile-related expenses and college tuition. The record does not reflect that these expenses were either anticipated or outstanding at the time the Contract was executed.

Thus, Debtors did not retain all of the insurance proceeds pending a final resolution of their dispute with Creditor. Debtors did not pay Creditor for any portion of the work Creditor performed. Creditor further notes that Debtors did not return the funds to their carrier notwithstanding Debtors' position that they did not feel that Creditor's work was complete or performed adequately.

In deposition testimony and in affidavits submitted with the Motion, Debtors testified that, when they decided to use the insurance funds to pay other bills, their intent was to take a loan from a 401(k) account to pay Creditor upon the project's completion. [ECF No. 18 at 18 (G. McFarland aff. ¶¶ 12-15, 19), 21 (T. McFarland aff. ¶¶ 11-14, 19.] Creditor's Response does not attempt to rebut this testimony.

Creditor alleges in Count One of the Complaint that Debtors owe a debt to Creditor that is non-dischargeable under § 523(a)(2)(A) because Debtors obtained services from Creditor by means of false pretenses, a false representation, or actual fraud. Specifically, Creditor contends that, when Debtors entered into the Contract, they "never intended to fully pay [Creditor] for its restoration services. Instead, [Debtors] intended to receive the insurance funds intended to be paid to [Creditor] and to spend said funds on other debts, including debts for college and for

4

automobile expenses." [ECF No. 4 ¶ 23.] For support, Creditor cites Debtors' testimony with regard to their financial situation at the time of the fire. According to Mr. McFarland, prior to the fire, Debtors "didn't go and have, you know a stockpile of extra cash at the end of each month that we were wondering what to do with …. [W]e did not have excess money at the end of each month." [ECF No. 24-2 at depo. p. 12.] Similarly, Mrs. McFarland explained, when asked whether Debtors were receiving calls from debt collectors before the fire, that "[t]here was always something left unattended to but nothing large." [ECF No. 24-3 at depo. p. 51.] Mrs. McFarland also testified, however, that Debtors never consulted with a bankruptcy attorney and "never considered it" before the fire occurred. [*Id.* at depo. p. 52.] Mr. McFarland testified similarly, stating that, while Debtors considered filing bankruptcy a decade before their fire, they were not considering filing for bankruptcy around the time of the fire. [ECF No. 24-2 at depo. pp. 9-11.]

Creditor alleges in Count Two that Debtors owe a debt that is non-dischargeable under § 523(a)(4) because the Contract's terms created a trust for Creditor's benefit, pursuant to which Debtors owed Creditor fiduciary duties. [ECF No. 4 ¶¶ 33-38.] Creditor alleges that Debtors breached their fiduciary duties by misappropriating the funds. [*Id.* ¶ 39.]

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding and venue is proper. 28 U.S.C. §§ 1334(b), 1409. Plaintiff's non-dischargeability claims are core proceedings. 28 U.S.C. § 157(b)(2)(I). The parties' pleadings confirm their consent to the Court's entry of final orders on these claims.

# ANALYSIS

A summary judgment is appropriate if the pleadings, discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. BANKR. P. 7056(c)(2). A summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007).

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury. *Id.* at 1478. Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Id.*

*Cox v. Ky. DOT*, 53 F.3d 146, 149 (6th Cir. 1995).

As noted above, there has been no adjudication to this point that Debtor owes any debt to Creditor. "The first step in any analysis under § 523(a) … is not whether a debt is non-dischargeable, it is whether a debt even exists—a 'threshold condition' to whether § 523(a) applies." *Feldman v. Pearl (In re Pearl)*, 577 B.R. 513, 523 (Bankr. E.D. Ky. 2017) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)). To be clear, the Court is not making any determination herein regarding whether any party is liable to another under the Contract; a trial would be needed to resolve that issue. For purposes of deciding the Motion, however, the Court assumes that Creditor can demonstrate that Debtors owe Creditor a debt.

I. **Debtor is Entitled To A Summary Judgment On Count One Seeking a Determination of Non-Dischargeability under § 523(a)(2)(A).**

Creditor has the burden to prove its fraud claim by a preponderance of the evidence. *Pearl*, 577 B.R. at 513. The Bankruptcy Appellate Panel for the Sixth Circuit has explained:

> to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (footnote omitted). *See also Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993).

*Greenberg v. Looney (In re Looney)*, 453 B.R. 252, 259 (B.A.P. 6th Cir. 2011). "Exceptions to discharge are narrowly construed in the debtor's favor." *HIJ Indus. v. Roy (In re Roy)*, 565 B.R. 820, 830 (Bankr. E.D. Ky. 2017) (citing *In re Zwosta*, 395 B.R. 378, 382-83 (B.A.P. 6th Cir. 2008)).

The Supreme Court recently explained:

> Section 523(a)(2) covers only situations in which "money, property, [or] services" are "obtained by . . . actual fraud," and results in a debt. *See Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). The statutory phrase "obtained by" is an important limitation on the reach of the provision. Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the inception of the debt, *i.e.*, when the debtor commits a fraudulent act to induce the creditor to part with his money, property, services, or credit.

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1591 (2016). The issue to be determined is whether, when the debt was incurred, "the debtor subjectively intended to repay the debt." *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). "[A] subjective approach still permits, and practicably speaking will require the use of circumstantial evidence to ascertain a debtor's intentions because rarely, if ever, will a debtor

7

actually admit to acting in a fraudulent manner." *Chase Bank v. Brumbaugh (In re Brumbaugh)*, 383 B.R. 907, 912 (Bankr. N.D. Ohio 2007); *see also Danvers Sav. Bank v. Alexander (In re Alexander)*, 427 B.R. 183, 195 (Bankr. D. Mass. 2010) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 789 (1st Cir. 1997)) ("Availability of direct evidence to prove a debtor's intent to deceive a creditor is unlikely to be obtained. The court, therefore, may infer fraudulent intent from the totality of the circumstances.").

"Generally, but not always, summary judgment is considered inappropriate where the issues involve intent." *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127, 129 (6th Cir. 1992) ("[a]lthough summary judgment is often inappropriate where the issues involve intent … summary judgment is not inappropriate here." (citations omitted). Stated differently, "[c]ases involving state of mind issues are not necessarily inappropriate for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). "The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (citations omitted).

Creditor certainly *argues* that Debtors never intended to pay Creditor for its services when the parties signed the Contract, and instead that Debtors planned to receive the insurance proceeds to pay for the restoration work and use that money to pay other debts. But Debtors contend that Creditor cannot satisfy its burden to put forward any *evidence* that Debtors made a material misrepresentation, or any *evidence* that Debtors intended to defraud Creditor, at the time the parties entered into the Contract.

In response, Creditor contends that signing the Contract constitutes the misrepresentation at issue, as Debtors did not intend to pay Creditor at the time the Contract was signed. Creditor

8

acknowledges that it does not have direct evidence of Debtors' intent to defraud, and instead it relies upon several "facts" that it contends, when taken together, are sufficient to meet its burden:

- When they signed the Contract, Debtors "were living paycheck to paycheck" and had unpaid bills.

- After receiving the insurance proceeds, Debtors refused to pay Creditor anything, alleging deficiencies in the work that Debtors never gave Creditor a reasonable chance to cure.   Instead, Debtors used the insurance funds to pay other bills.

- Notwithstanding that Debtors "made a record of their issues with" Creditor's work, by accepting and cashing the insurance checks, Debtors "indicated an acceptance of [Creditor]'s work as well" based on Contract's terms.   [ECF No. 24 at 5.]

- It is inconsistent for Debtors to "fire" Creditor and still contend that they will pay Creditor when the job is completed.

- Debtors never disputed Creditor's "mitigation work."   And, Debtors understood that they could pay Creditor for a portion of the work.

- Mr. McFarland communicated with Creditor about the work performed while Mrs. McFarland took control of the insurance funds, such that Mr. McFarland could "claim ignorance" about the insurance money while knowing that some of the funds from the insurance company were being spent on other family expenses.

Assuming all of these facts to be true, the question presented is whether they could amount to sufficient proof of a misrepresentation and an intent to defraud under a "totality of the circumstances" analysis.   The Court concludes that they cannot.

The aforementioned facts, taken as true, simply do not create a chain of inferences that constitute sufficient evidence that Debtors intended to defraud Creditor at the time of contracting, or that Debtors made a misrepresentation to Creditor about their intentions when Mr. McFarland signed the Contract.   Only the first "fact" above speaks to Debtors' condition at the time of contracting, and an inability to repay when a debt is incurred does not signify an intention not to repay.   *See*, *e.g.*, *Rembert*, 141 F.3d at 281-82 ("[W]e conclude that the bankruptcy court erred by considering Rembert's ability to repay, as well as her intent to repay.

9

Focusing on Rembert's intent to repay, there was no evidence presented to the bankruptcy court indicating that Rembert used the credit cards without intending to repay the Appellants."). The parties agree that a performance and payment dispute arose *after* they executed the Contract, but Creditor has not established a plausible inference that this dispute was contrived. Therefore, when required to "put up or shut up" in connection with this Motion, Creditor has not supplied sufficient evidence to allow this Court to draw a reasonable inference that, at the time Debtors signed the Contract on Christmas morning after a significant fire at their family home, they never intended to pay the company they hired to do the remediation work and, instead, planned to use the company to obtain anticipated insurance proceeds to pay other bills.

As the Sixth Circuit has instructed, "'where the record taken as a whole could not lead a rational trier of fact to find' for the respondent, [a summary judgment] motion should be granted" and this Court "has at least some discretion to determine whether the respondent's claim is 'implausible.'" *Rembert*, 886 F.2d at 1480 (quoting *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Creditor's claim is implausible, and Debtors are entitled to a summary judgment on Count One.

**III.    Debtor is Entitled To A Summary Judgment On Count Two Seeking a Determination of Non-Dischargeability under § 523(a)(4).**

"A debt is non-dischargeable under § 523(a)(4) if it is incurred by (a) fraud or defalcation while acting in a fiduciary capacity, (b) larceny, or (c) embezzlement." *Pearl*, 577 B.R. at 528. In this case, Creditor contends that Debtors committed fraud while acting in a fiduciary capacity, and must prove its claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Under Sixth Circuit precedent, the term "fiduciary capacity" has a very specific meaning with respect to claims under § 523(a)(4):

> We construe the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrower than we construe the term "fiduciary relationship" in other contexts. *Id.* at 179-80. Specifically, defalcation is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor." *Id.* at 180 (citing *In re Young*, 91 F.3d at 1371). A fiduciary capacity under § 523(a)(4) is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor." *Id.* at 180 (citing *In re Young*, 91 F.3d 1367, 1371 (10th Cir. 1996)). Therefore, GAIC must establish: "(1) the existence of a trust, either express or statutorily created; (2) the debtor owed a fiduciary obligation with relation to that trust; and (3) the debtor breached his or her fiduciary duty by either misappropriating the trust *res* or by simply failing, intentionally or unintentionally, to properly account for the trust *res*." *In re Smith*, 238 B.R. 664, 670 (Bankr. W.D. Ky. 1999).

*Poynter v. Great Am. Ins. Co. (In re Poynter)*, 535 Fed. Appx. 479, 481-482 (6th Cir. 2013). "Under Kentucky law, an express or technical trust is created by: '(1) an expressed intent to create a trust; (2) an ascertainable *res*; (3) a sufficiently certain beneficiary; and (4) [a] trustee who administers the trust for the beneficiary.'" *Id.* at 482 (quoting *In re Grant,* 325 B.R. 728, 734 (Bankr. W.D. Ky. 2005)).

In *Poynter*, the Sixth Circuit considered it important that the word "trust" was used in the pertinent written agreement when finding that an express trust had been created. The word "trust" is not contained within the sentences from the Contract that Creditor relies on to support its argument, nor is that word located anywhere else in the Contract. Moreover, the Contract does not contain any language that would describe a trust *res* or any language stating that Debtors would serve as Creditor's trustee.

The first sentence Creditor cites—"Customer authorizes [Creditor] to make proof of loss to, and act as agent in collection and receive payment from any insurance company liable for the damages or condition of the aforementioned premises comprising the subject of this contract"—states that *Creditor* would act as *Debtors'* agent, not the other way around. An agent is a principal's fiduciary, but the principal does not owe fiduciary obligations to the agent. *See*, *e.g.*, RESTATEMENT (THIRD) OF AGENCY, § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). "The obligations that a principal owes an agent … are not fiduciary." *Id*. at cmt. e.

The second sentence Creditor cites—"Customer also agrees to make prompt payment of any deposit, deductibles, or monies owed for the services rendered, which are not paid to [Creditor] by insurance company proceeds"—states that the Customer, *i.e.* Debtors, will promptly pay money owed to Creditor that is not directly paid to Creditor from an insurance company. Based on *Poynter*, this is not sufficient language to establish an express trust under Kentucky law.

Creditor also relies on deposition testimony from Mr. McFarland and from Creditor's owner to support the argument that the insurance process involved Creditor providing written estimates to the insurer, and that without those estimates Debtors would not have received the insurance proceeds. Further, Creditor argues that Debtors' testimony makes clear that Debtors knew that the funds they received were to be used to pay Creditor. Regardless of this testimony, there is no "expressed intent to create a trust" within the Contract, nor any other evidence in the record to support an express agreement for Debtors to hold the insurance proceeds in trust for Creditor. Absent appropriate trust-creating language, under Sixth Circuit precedent, a claim

under § 523(a)(4) fails and Debtors are entitled to summary judgment on Count Two of the Complaint.

## CONCLUSION

For the foregoing reasons, Debtors' Motion for Summary Judgment will be granted. A separate judgment will be entered.

13

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Tuesday, February 20, 2018**
**(tnw)**